UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:08-CV-00157-M**

**VICKIE COSTELLO**                                                                    **PLAINTIFF**

**V.**

**SUN LIFE ASSURANCE COMPANY**
**OF CANADA**                                                                           **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for judgment on the administrative record on Plaintiff's claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. See generally Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring). Fully briefed, the matter is ripe for decision. For the reasons that follow, both motions are **DENIED** and the case is **REMANDED** to Sun Life for a full and fair review.

### I. BACKGROUND

Plaintiff Vickie Costello had a long-term disability insurance policy with Defendant Sun Life through her employer, Logan Aluminum, Inc. Under the policy, Sun Life agreed to pay Costello if she become disabled and was unable to perform "the material and substantial duties of her occupation as that occupation exists in the national economy." (AR 0010-0011). After twenty-four months, however, the plan would

1

continue to pay Costello benefits only if she was unable to perform the material and substantial duties of "any gainful occupation." (AR 0011). On May 19, 2006, Costello left work after a stressful encounter with a co-worker, which resulted in her receiving a "last chance" agreement. (AR 0332-0333). She never returned. On November 17, 2006, she filed a claim for long-term disability benefits under her plan with Sun Life. She also applied for similar benefits from the Social Security Administration.[1]

In support of her application, Costello provided Sun Life with a statement from Dr. Sims, who had been her treating physician since 1999. Dr. Sims indicated that Costello had rheumatoid arthritis, fibromyalgia, and chronic fatigue, and opined that she should not be required to "grasp or manipulat[e]" objects with her hands; she should only engage in "negligible bending, squatting, climbing, twisting, pushing, pulling, balancing, kneeling, crawling, and lifting up to 10 lbs.," and she should only "occasional[ly] driv[e], walk, sit and stand." (AR 0428, 0431). On January 16, 2007, Sun Life denied Costello's claim. Relying on the advice of nurse McCormack, it found Dr. Sim's conclusion that Costello was unable to work unsupported by the medical documentation because there was "[no] evidence of any joint damage" from her arthritis; she had "full range of motion of all joints"; and there was "no swelling." (AR 00403).

Costello appealed. At this time, she provided Sun Life with notes from her December 14, 2006, appointment with Dr. Sims, which indicated that she had "some

---

[1] Costello's claim for Social Security disability benefits was approved on April 21, 2007.

general puffiness in her fingers which are not inflammatory. Range of motion is acceptable. I do not think she has much in the way of active synovial swelling except perhaps in the wrist and at that, it is trace . . ."; a letter from physician's assistant Jose Peveler dated February 9, 2007, which said that Costello "has severe rheumatoid arthritis . . . . [and] would be unable to return to any type of employment . . ."; and a letter from Dr. Cuddapagh dated April 19, 2007, which said that he was "treating [her] for fibromyalgia and chronic fatigue . . . . [and] [t]he demands of working full time exceed her functional and cognitive abilities." (AR 00417; AR 00424; AR 00455).

Sun Life hired Dr. Ash, a board certified rheumatologist, to review Costello's claim. Dr. Ash concluded that "Ms. Costello does not have severe rheumatoid arthritis" which would prevent her from working, because there is no evidence of "joint swelling, joint deformities, joint space narrowing and joint erosions . . . and she has full range of motion of her joints." (AR 00463). Dr. Ash also found that "[f]ibromyalgia is not disabling" and "[t]here is nothing in [Costello's] history or physical findings that would point to [anything] aggravating her fibromyalgia." (AR 00464). Finally, Dr. Ash concluded that Dr. Cuddapah's diagnosis of chronic fatigue was a "medical fiction" because there was "no supporting documentation anywhere in the records." Id. Based on this report, Sun Life denied Costello's claim June 1, 2007. This suit followed.

## II. STANDARD OF REVIEW

The Court reviews Sun Life's decision to deny Costello benefits under "the highly deferential arbitrary and capricious standard of review" because, as both parties

3

acknowledge, Sun Life has discretionary authority to interpret and apply the plan. Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998) (quotation omitted). The arbitrary and capricious standard "is the least demanding form of judicial review . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." Perry v. United Food & Commercial Workers Dist. Unions 405 & 442, 64 F.3d 238, 241 (6th Cir. 1995). Put another way, a decision will be upheld "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." Baker v. United Mine Workers of America Health & Retirement Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

Of course, while the arbitrary and capricious standard is deferential "it is not . . . without some teeth." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003) (quotation omitted). "[M]erely because [a court's] review must be deferential does not mean [its review] must also be inconsequential . . . . the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). "The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously 'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" Evans v. UnumProvident Corp., 434 F.3d 866, 876 (6th Cir. 2006) (quotation omitted).

## III. DISCUSSION

Plaintiff argues that Sun Life arbitrarily and capriciously denied her claim for long-term disability benefits because the "final decision on this matter was made by two employees of Sun Life, Mark Sourcy and Morse Doanes . . . [who] relied upon the opinions of a doctor and a nurse, both of whom were contracted to review these files by Sun Life, and neither of whom ever personally conducted an examination of Ms. Costello . . . . [while] entirely ignor[ing] the records of doctors who found her to be incapable of returning to work." (Plaintiff's Brief, p. 7-8). Plaintiff also argues that Sun Life's conflict of interest as both administrator of the plan and payor of claims, its failure to meaningfully distinguish the Social Security Administration's seemingly contrary decision, and its decision to deny her benefits based only on a file review support a finding that Sun Life acted arbitrarily in denying her claim. Id. Defendant counters that it was reasonable for it to determine that Costello's rheumatoid arthritis, fibromyalgia, and alleged chronic fatigue did not cause her to be disabled within the meaning of the plan because the work-limitations imposed by her treating physicians were not based on any documented medical evidence.

### A.

To determine whether a plan administrator's decision to deny benefits was arbitrary and capricious, courts consider not just the medical evidence and opinions, but also whether there is a conflict of interest, whether the plan administrator failed to give consideration to the Social Security Administration's determination that the applicant was

totally disabled, and whether the plan administrator based its decision to deny benefits on a file review instead of conducting a physical examination of the applicant. DeLisle v. Sun Life Assurance Co of Canada, 558 F.3d. 440 (6th Cir. 2009); Bennett v. Kemper Nat. Services, Inc., 514 F.3d 547 (6th Cir. 2008); Calvert v. Firstar Finance, Inc., 409 F.3d 286 (6th Cir. 2005) (explaining "that the failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."). The Court considers these factors in turn.

    1. Conflict of Interest

For purposes of ERISA claims, there is a conflict of interest where the insurance company is both the "decision maker, determining which claims are covered, and the payor of those claims." Calvert v. Firstar Finance Inc., 409 F.3d. 286, 292 (6th Cir. 2005). This is true even where the administrator of the plan is an insurance company and not the employer of the potential beneficiary. DeLisle v. Sun Life Assurance Co of Canada, 558 F.3d. 440, 445 (6th Cir. 2009). In this case, Sun Life is both the decision-maker and payor under the insurance policy. Accordingly, the Court will "view [Sun Life's] explanation [for denying Costello's claim for benefits] with some skepticism." Moon v. Unum Provident Corp., 405 F.3d 373, 381-82 (6th Cir. 2005).

    2. Social Security Benefits Determination

As Sun Life correctly observes, an award of disability benefits from the Social Security Administration ("SSA") "does not automatically entitle a party to disability

coverage under an insurance plan." Calvert v. Firstar Finance, Inc., 409 F.3d 286, 294 (6th Cir. 2005). However, the Sixth Circuit has explained that such a discrepancy is "far from meaningless." Id. A reviewing court should favor finding that an administrator's decision to deny benefits was arbitrary and capricious where an applicant is encouraged to apply for Social Security benefits, the plan administrator benefits from payouts by the Social Security Administration, and the administrator fails to adequately explain the discrepancy between the two decisions. Bennett v. Kemper Nat'l Servs., 514 F.3d. 547, 554 (6th Cir. 2008).

That is precisely the situation here. Sun Life required Costello to apply for benefits with the SSA and it received, or would have received, a deduction based on those benefits. Further, the only explanation Sun Life gave Costello for the discrepancy between its decision to deny her claim and the Social Security Administration's decision was to say that it was not bound by the SSA's findings and that the two organizations apply different standards in making their disability determinations. Although this is true, see Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832-33 (2003) and Whitaker v. Hartford Life & Accident Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005), the Court finds the explanation inadequate. If it were enough for Sun Life, or any insurer, to simply recite a disclaimer that the SSA applies a different standard, this factor would be meaningless. The Court therefore concludes that Sun Life's failure to provide a substantive explanation for the discrepancy between its decision and the Social Security Administration's decision supports a finding that Sun Life was arbitrary and capricious in

denying Costello's claim.

3. File Review

Sun Life denied Costello's claim without exercising its right to examine her in person. While there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination," the failure to conduct an in-person examination may suggest that an insurer's decision to deny benefits was arbitrary and capricious. Calvert, 409 F.3d. at 296. In Smith v. Cont'l Cas. Co., 450 F.3d 253 (6th Cir. 2006), for example, the Sixth Circuit found that an insurer arbitrarily denied a claim for benefits where the physician it hired to conduct a file review dismissed as incredible a patient's subjective complaints of pain, which were recorded in the treating physician's records, without actually examining the patient. As the court explained, "[defendants] could have obtained an independent medical examination to evaluate [plaintiff's] pain. Their decision to not perform this examination supports the finding that their determination was arbitrary." Id. at 263-64.

The Court concludes similarly here. Notwithstanding Defendant's contention that Dr. Ash took "Costello's complaints, symptoms, and examinations as reflected in the records of Costello's treating physicians at face value," it is clear that Dr. Ash did not credit Costello's reports of pain from rheumatoid arthritis. (Defendant's Response, p. 25). Dr. Sims indicated on his attending physician statement to Sun Life that Costello had "[r]heumatoid arthritis . . . in [her] hands causing pain . . . [including] tenderness to palpation [that is] evident on radiographic studies." (AR 00326). On this same form, he

8

also listed "chronic pain" under the heading "subjective findings." Id. Dr. Ash recognized that pain was the basis for Costello's claim of disability when she noted that Costello "stopped working . . . due to pain from rheumatoid arthritis . . ." (AR 00458). However, she inexplicably dismissed evidence of that pain in her report for Sun Life.

Dr. Ash concluded that Costello was not disabled by pain because "[Costello's] general pain was subjectively better" on July 6, 2006, after it had increased on April 17 and May 22, 2006; because Dr. Sims noted on August 24, 2006, that "[Costello] did not appear to be in any acute pain"; and because Costello was apparently able to work with pain for a number of years without filing for disability benefits. (AR 214, 217, 230, 340). Aside from the fact that there is no "incompatibility between working full time and being disabled from working full time," Rochow v. Life Ins. Co. of N. Am., 482 F.3d. 860, 865 (6th Cir. 2007), the problem with this reasoning is that it ignores the evidence, including the conclusion of Dr. Sims, that Costello suffered from chronic pain. On March 13, 2006, for example, Costello indicated that "her pain level [was] *as it was previously*"; and, on January 30, 2006, "she denie[d] . . . *increased pain* other than *what she normally has* pre infusion." (AR 00226) (emphasis added).[2] Because Dr. Ash arbitrarily ignored this evidence, and because Sun Life had the opportunity to assess Costello's pain in-person and did not, the Court weighs this factor against the reasonableness of Sun Life's decision.

---

[2] Costello's supervisor at Logan Aluminum, Inc., also witnessed her pain on a daily basis and informed Sun Life that "there's no way she can come back and perform her job." (AR 00203).

9

B.

It bears repeating that these factors do not actually answer whether Sun Life offered a "reasoned explanation, based on the evidence" for its decision to deny benefits to Costello—they simply increase the Court's skepticism of the insurer's explanation. Perry v. United Food & Commercial Workers Dist. Unions 405 & 442, 64 F.3d 238, 241 (6th Cir. 1995); see also Bennett v. Kemper Nat. Services, Inc., 514 F.3d 547, 556 (6th Cir. 2008). Here, Sun Life says that it denied Costello's claim because her medical records did not support a finding that she was unable to work since, inter alia, there was no evidence of "joint swelling, joint deformities, joint space narrowing and joint erosions . . . and she has full range of motion of her joints." (AR 00463). "As you can see," Sun Life explained in its letter to Costello, "Dr. Ash found no persuasive medical support for the level of impairment described by Dr. Sims, Ms. Emmick, Mr. Peveler, and Dr. Cuddapah. Moreover, Dr. Ash found no medical evidence supporting a conclusion that you are unable to perform the material and substantial duties of a sedentary occupation, to include using your hands for simple and firm grasping, as well as fine manipulation." (AR 00470).

The Court finds this explanation unreasonable. The logic of Sun Life's decision seems to be that since Costello's medical records did not show the presence of swelling or joint erosion, Costello did not suffer debilitating pain as a result of her rheumatoid arthritis such that it would prevent her from the fine grasping or manipulating required to perform her job. However, this conclusion does not follow from the premise. While the

10

presence of swelling or joint erosion might indicate that Costello suffered debilitating pain, the absence of such symptoms of rheumatoid arthritis surely does not compel the contrary conclusion. Nor is such an inference even very reasonable given the evidence of Costello's pain in the record, see *infra*, and the determination of Dr. Sims that pain from her rheumatoid arthritis would prevent her from doing her job. (AR 00326). Thus, when the Court considers all of the above factors, it can only conclude that Sun Life's decision to deny Costello's claim for benefits was arbitrary and capricious.

Sun Life did not engage in a deliberate and principled reasoning process. However, the record does not clearly establish that Costello is disabled and entitled to judgment in her favor. "'[W]here the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled,'" remand to the plan administrator is the appropriate remedy. Cooper v. Life Ins. Co. of N. Am., 486 F.3d 157, 171 (6th Cir. 2007) (quoting Elliott v. Metro. Life Ins. Co., 473 F.3d 613, 622 (6th Cir. 2006)). Accordingly, the Court will remand the case to Sun Life to provide "a full and fair review" of Costello's claim for long-term disability benefits. See, e.g., Helfman v. GE Group Life Assur. Co., 573 F.3d 383, 396 (6th Cir. 2009); Smith v. Cont'l Cas. Co., 450 F.3d 253, 255 (6th Cir. 2006).

## IV. CONCLUSION

For the foregoing reasons, the parties' cross-motions for judgment on the administrative record are **DENIED** and the case is **REMANDED** to Sun Life for a full and fair review.

cc. Counsel of Record