## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:08-CV-00157-M**

**VICKIE COSTELLO**                                                                **PLAINTIFF**

**V.**

**SUN LIFE ASSURANCE COMPANY**
**OF CANADA**                                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

        This matter is before the Court on Plaintiff Vickie Costello's motion asking the Court to review Defendant Sun Life Assurance Company of Canada's April 26, 2011 post-remand claims decision denying her long-term disability benefits. [DN 21].  Previously, this matter was before the Court on cross-motions for judgment on the Administrative Record on Costello's claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. See generally Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring).  The Court remanded the case ordering Sun Life to conduct a full and fair review. [DN 20].  After further review, Sun Life again denied Costello's claim for long-term disability benefits.  Fully briefed, the matter is ripe for decision.

### I. BACKGROUND

        Plaintiff Vickie Costello had a long-term disability insurance policy with Defendant Sun Life Assurance Company of Canada ("Sun Life") through her employer, Logan Aluminum, Inc. Under the policy, Sun Life agreed to pay Costello short-term benefits if she became unable to perform "the material and substantial duties of her occupation as that occupation exists in the

national economy." (AR 0010-0011).   After twenty-four months, however, the plan would continue to pay Costello benefits only if she was unable to perform the material and substantial duties of "any gainful occupation." (AR 0011).   On May 19, 2006, Costello left work after a stressful encounter with a co-worker, which resulted in her receiving a "last chance" agreement. (AR 0332-0333).  She never returned.  On November 17, 2006, she filed a claim for long-term disability benefits under her plan with Sun Life.  She also applied for similar benefits from the Social Security Administration.[1]

In support of her application, Costello provided Sun Life with a statement from Dr. Gerald Sims, who had been her treating physician since 1999.  Dr. Sims indicated that Costello had rheumatoid arthritis, fibromyalgia, and chronic fatigue, and opined that she should not be required to "grasp or manipulat[e]" objects with her hands; she should only engage in "negligible bending, squatting, climbing, twisting, pushing, pulling, balancing, kneeling, crawling, and lifting up to 10 lbs.," and she should only "occasional[ly] driv[e], walk, sit and stand." (AR 0428, 0431).  On January 16, 2007, Sun Life denied Costello's claim.  Relying on the advice of Sun Life's in house nurse Susan McCormack, Sun Life found Dr. Sim's conclusion that Costello was unable to work unsupported by the medical documentation because there was "[no] evidence of any joint damage" from her arthritis; she had "full range of motion of all joints"; and there was "no swelling." (AR 00403).

Costello appealed.  On appeal, she provided Sun Life with notes from her December 14, 2006, appointment with Dr. Sims, which indicated that she had "some general puffiness in her fingers which are not inflammatory. Range of motion is acceptable.  I do not think she has much

---

[1] Costello's claim for Social Security disability benefits was approved on April 21, 2007.

in the way of active synovial swelling except perhaps in the wrist and at that, it is trace . . ."  (AR 00417).  She also provided a letter from physician's assistant Jose Peveler dated February 9, 2007, which said that Costello "has severe rheumatoid arthritis . . . . [and] would be unable to return to any type of employment . . ."; and a letter from Dr. Cuddapagh dated April 19, 2007, which said that he was "treating [her] for fibromyalgia and chronic fatigue . . . . [and] [t]he demands of working full time exceed her functional and cognitive abilities." (AR 00424; AR 00455).

Sun Life hired Dr. Julia Ash, a board certified rheumatologist, to review Costello's claim. Dr. Ash concluded that "Ms. Costello does not have severe rheumatoid arthritis" which would prevent her from working, because there is no evidence of "joint swelling, joint deformities, joint space narrowing and joint erosions . . . and she has full range of motion of her joints." (AR 00463).  Dr. Ash also found that "[f]ibromyalgia is not disabling" and "[t]here is nothing in [Costello's] history or physical findings that would point to [anything] aggravating her fibromyalgia." (AR 00464).  Finally, Dr. Ash concluded that Dr. Cuddapah's diagnosis of chronic fatigue was a "medical fiction" because there was "no supporting documentation anywhere in the records." Id.  Based on this report, Sun Life denied Costello's claim June 1, 2007.  This suit followed and on October 14, 2009, this Court denied cross-motions for judgment by both Costello and Sun Life and remanded to Sun Life for a full and fair review concluding that Sun Life failed to provide a substantive explanation for the discrepancy between its decision and the Social Security Administration's ("SSA") decision and denied Costello's claim without exercising its right to examine her in person.  (Memorandum Opinion and Order, [DN 20].)

Upon remand, Sun Life requested Costello's most recent medical records from her

treating physicians, Dr. Sims and Dr. Cuddapagh[2].  Dr. Sims continued to treat the rheumatoid arthritis with infusions of Orencia and Remicade.  (AR 1061-1193).  The records from Dr. Sims office continue to document her symptoms, including synovitis, swelling of joints, and pain levels due to her rheumatoid arthritis and fibromyalgia.  (AR 1061-1193).

Sun Life also obtained an updated copy of the Social Security Administration's file regarding the SSA's decision to award benefits.  (AR 825, 828, 1224-1463).  Sun Life took notice of a report made by Dr. Bradley Scott Rice who conducted a physical examination on Costello at the request of the SSA.  Dr. Rice concluded that Costello had "a mild level of limitation in activities of daily living and a moderate level of limitation in job-related activities, specifically related to rheumatoid arthritis." (AR 1319).  Sun Life also reviewed a Physical Residual Functional Capacity Assessment of Costello performed by Dr. Sudihideb Mukherjee at the request of the SSA. (AR 1307-1314).  Dr. Mukherjee made determinations regarding Costello's ability to lift, stand and/or walk; ability to push and/or pull; and ability to climb a ramp or stairs among other abilities.

In addition, Sun Life asked Dr. David Knapp, a rheumatologist, to conduct an independent medical examination of Costello on April 23, 2010.  Dr. Knapp reviewed Costello's medical records and spent over an hour examining her.  (AR 1495-1508).  Costello informed Dr. Knapp of her symptoms which included "joint pain, muscle pain, fatigue, sleep disturbance, burning in the feet, headaches, panic attacks, and depression."  (AR 1495).  According to Costello, her limitations include an inability to stand for any period of time, stiffness after sitting,

---

[2] Sun Life obtained records regarding Costello's mental health as well, but in Costello's Reply Brief she states that she "does not assert that she is disabled based on any mental health issues." (Pl.'s Reply, 2 [DN 30].)  Therefore, Sun Life's discussion of her mental health records will not be addressed.

inability to stoop "and any physical activity resulted in generalized weakness and fatigue of a prolonged nature." (AR 1495). In Dr. Knapp's opinion, "[t]he information in the file [did] not clearly document a change in the claimant's condition on or around May 22, 2006, when she ceased work." (AR 1506). He found that the "documentation in the file does not support any functional impairments related to rheumatoid arthritis" and believes that if she does have rheumatoid arthritis "it is very mild." (AR 1506). Dr. Knapp showed concern that "some of her complaints related to fibromyalgia have been misconstrued as being rheumatic in origin[.]" (AR 1506).

Sun Life again denied Costello benefits on August 3, 2010, after taking into consideration Dr. Knapps examination. (AR 1606). On January 27, 2011, Costello appealed Sun Life's decision and requested a review. (AR 1628). In response to Costello's appeal, her medical records and file were sent to Dr. Harvey Schwartz, a board certified rheumatologist, for an independent medical file review. Along with the records, the video of Costello's examination with Dr. Knapp was also provided. Dr. Schwartz concluded that Costello's rheumatoid arthritis was "under excellent control" and she did not "demonstrate impaired mobility, hand or other joint dysfunction or an deformities from rheumatoid arthritis." (AR 1687). He agreed that she had fibromyalgia, but "none of the medical reports from Dr. Sims ever indicate a person who cannot perform routine functions such as standing, walking, sitting or carrying objects." (AR 1687).

On April 26, 2011, Sun Life informed Costello that it had, again, denied her benefits and Costello's motion for review of Sun Life's post-remand findings followed.

## II. STANDARD OF REVIEW

The Court reviews Sun Life's decision to deny Costello benefits under "the highly deferential arbitrary and capricious standard of review" because, as both parties acknowledge, Sun Life has discretionary authority to interpret and apply the plan. Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998) (quotation omitted).  The arbitrary and capricious standard "is the least demanding form of judicial review . . . .  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." Perry v. United Food & Commercial Workers Dist. Unions 405 & 442, 64 F.3d 238, 241 (6th Cir. 1995).  Put another way, a decision will be upheld "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." Baker v. United Mine Workers of America Health & Retirement Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

Of course, while the arbitrary and capricious standard is deferential "it is not . . . without some teeth." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003) (quotation omitted).  "[M]erely because [a court's] review must be deferential does not mean [its review] must also be inconsequential . . . .  the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005).  "The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously 'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" Evans v. UnumProvident Corp., 434 F.3d 866, 876 (6th Cir. 2006) (quotation omitted).

To determine whether a plan administrator's decision to deny benefits was arbitrary and capricious, courts consider not just the medical evidence and opinions, but also whether there is a conflict of interest, whether the plan administrator failed to give consideration to the Social Security Administration's determination that the applicant was totally disabled, and whether the plan administrator based its decision to deny benefits on a file review instead of conducting a physical examination of the applicant. DeLisle v. Sun Life Assurance Co of Canada, 558 F.3d. 440 (6th Cir. 2009); Bennett v. Kemper Nat. Services, Inc., 514 F.3d 547 (6th Cir. 2008); Calvert v. Firstar Finance, Inc., 409 F.3d 286 (6th Cir. 2005) (explaining "that the failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.").

## III. DISCUSSION

Costello argues that post-remand, Sun Life arbitrarily and capriciously denied her claim for long-term disability benefits basing the denial solely on the report and exam from Dr. David Knapp and the report from Dr. Harvey Schwartz.  Costello argues that as paid examiners, Dr. Knapp and Dr. Schwartz "have not provided the substantial evidence required for Sun Life to have a basis to deny Ms. Costello's benefits because they failed to account for Ms. Costello's pain level, which has been consistently acknowledged and treated by Ms. Costello's private medical professionals."  (Pl.'s Brief, 7 [DN 27].)  Costello also reiterates her previous arguments that Sun Life has a conflict of interest as both administrator of the plan and payor of claims and it failed to meaningfully distinguish the Social Security Administration's seemingly contrary decision. (Id. at 4.)  Sun Life counters that it was reasonable for it to determine that Costello's

7

rheumatoid arthritis, fibromyalgia, and alleged chronic fatigue did not cause her to be disabled within the meaning of the plan because the work-limitations imposed by her treating physicians were not based on any documented medical evidence, including the post-remand evaluations. (Def.'s Brief, 30 [DN 29].)

### A. Conflict of Interest

For purposes of ERISA claims, there is a conflict of interest where the insurance company is both the "decision maker, determining which claims are covered, and the payor of those claims." Calvert v. Firstar Finance Inc., 409 F.3d. 286, 292 (6th Cir. 2005). This is true even where the administrator of the plan is an insurance company and not the employer of the potential beneficiary. DeLisle v. Sun Life Assurance Co of Canada, 558 F.3d. 440, 445 (6th Cir. 2009). In this case, Sun Life is both the decision-maker and payor under the insurance policy. Accordingly, the Court will "view [Sun Life's] explanation [for denying Costello's claim for benefits] with some skepticism" and will weigh this conflict as a factor in deciding whether Sun Life's decision was arbitrary and capricious. Moon v. Unum Provident Corp., 405 F.3d 373, 381-82 (6th Cir. 2005).

### B. Social Security Benefits Determination

An award of disability benefits from the Social Security Administration "does not automatically entitle a party to disability coverage under an insurance plan." Calvert, 409 F.3d at 294. However, the Sixth Circuit has explained that such a discrepancy is "far from meaningless." Id. A reviewing court should favor finding that an administrator's decision to deny benefits was arbitrary and capricious where an applicant is encouraged to apply for Social Security benefits, the plan administrator benefits from payouts by the Social Security

8

Administration, and the administrator fails to adequately explain the discrepancy between the two decisions. Bennett v. Kemper Nat'l Servs., 514 F.3d. 547, 554 (6th Cir. 2008).

In its October 14, 2009, Opinion, this Court concluded that Sun Life's failure to provide a substantive explanation for the discrepancy between its decision and the Social Security Administrations' decision supported a finding that Sun Life was arbitrary and capricious in denying Costello's claim. [DN 20].   Upon remand, Sun Life obtained the entire updated SSA file and provided it to Dr. Knapp and Dr. Schwartz for their review.  (Def.'s Brief, 27 [DN 29].) In support of its decision to deny Costello's claim, Sun Life again reiterates that it was not bound by the SSA's findings and that the two organizations apply different standards in making their disability determinations.  Although this is true, see Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832-33 (2003) and Whitaker v. Hartford Life & Accident Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005), it is not enough for Sun Life, or any insurer, to simply recite a disclaimer that the SSA applies a different standard.

However, in its August 3, 2010 letter denying benefits, Sun Life also addressed the opposing conclusions of the SSA's medical examiner, Dr. Bradley Scott Rice, and Sun Life's examiners, Dr. Knapp and Dr. Schwartz.  (AR 1606-1625).  Dr. Rice conducted a medical exam for the SSA and found a decreased range of motion of Costello's shoulders and "a mild level of limitation in activities of daily living and a moderate level of limitation in job-related activities, specifically related to rheumatoid arthritis."   (AR 1319).   A Physical Residual Functional Capacity Assessment was conducted by the SSA and Dr. Suhideb Mukherjee made determinations that Costello could occasionally lift 20 pounds and frequently lift 10 pounds; she could stand and/or walk at least 2 hours in an 8 hour workday; sit for about 6 hours in an 8 hour

workday; and was limited in her lower extremities with the ability to push and/or pull.  (AR 1308).  In contrast, Dr. Knapp concluded that "physical restrictions and limitations were not justified given the absences of any evidence that Costello's rheumatoid arthritis was active and the fact that appropriate treatment for fibromyalgia includes being physically active rather than physically restricted."  (Def.'s Brief, 11 [DN 29], citing AR 1506).  Sun Life discussed the discrepancy stating:

> Of note, during the Independent Medical Examination which was videotaped Ms. Costello comments on the thoroughness of Dr. Knapp's evaluation and is noted to state that she was with one Social Security medical examiner for 'maybe ten minutes.'  It is impossible to fully understand why two medical examiners would come to such different conclusions, but perhaps the brevity of the SSDI rheumatology examination led that examiner to a different conclusion.
>
> . . . .
>
> This consultant notes that the Social Security Administration gave 'great weight' to the diagnosis of Rheumatoid Arthritis while in general it appears that Ms. Costello has been lucky enough to have little evidence of synovitis, deformity, or limitation of motion on that basis based on the examinations and review in the file.
>
> Additionally, the exertional limitations noted in the [Physical Residual Functional Capacity Assessment] appear to fall mostly within those outlined in the Occupational Analysis performed for the claimant's occupation during Sun Life's evaluation of the claim.  The Social Security Administration may consider other occupations the claimant has performed during her work history, while Sun Life is limited to considering her ability to perform the material and substantial duties of the sedentary occupation she was performing at the time she left work on May 22, 2006.
>
> (AR 1616-1617).

Costello maintains that Sun Life failed to give meaningful consideration to the decision of the SSA.  (Pl.'s Reply, 4 [DN 30].)  However, Sun Life's August 3, 2010 denial letter specifically addresses why its denial of benefits was inconsistent with the SSA's decision.  As

stated above, Sun Life considered the SSA's medical evaluation, but ultimately relied on the evaluation of Dr. Knapp, and based on the limitations noted in the SSA's Physical Residual Functional Capacity Assessment, concluded that Costello was not disabled. (AR 1616-1617). According to Sun Life's plan, Costello's previous occupation is classified as sedentary, which requires "exerting up to 10 lbs of force occasionally, and/or a negligible amount of force constantly to move objects.  Sedentary work requires sitting most of the time, but may involve walking or standing for a brief period of time." (AR 1611).  Under Sun Life's plan, Costello's limitations as documented in the SSA's Physical Residual Functional Capacity Assessment do not render her disabled within the exertional requirements of a sedentary occupation.   In addition, the SSA's decision considered her psychological condition and evaluated her mental status.  As Costello has stated that she is not disabled based on any mental health issues, Sun Life adequately explained the discrepancy between its decision and the SSA's decision.

### C.  Independent Medical Exam/File Review

This Court previously found that Dr. Ash arbitrarily ignored evidence of Ms. Costello's pain, and Sun Life had the opportunity to assess Costello's pain in-person but declined.  The Sixth Circuit has repeatedly noted that there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination."  Calvert, 409 F.3d. at 296.  However, "the failure to conduct a physical examination-especially where the right to do so is specifically reserved in the plan-may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination," Id. at 295,

The record reflects that upon remand Sun Life exercised its right to conduct a separate independent medical review of Costello and an independent file review.  Dr. David Knapp, a

rheumatologist, conducted an independent medical examination on Costello at the request of Sun Life, and Dr. Harvey Schwartz reviewed Costello's file and a video tape of Dr. Knapp's examination. Further, in conducting the independent file reviews, the rheumatologists considered the entire record available to them, relied on the entire file as a whole, and provided thorough summaries of the documents reviewed. See Nuyt v. Sun Life Assur. Co. of Canada, 2009 WL 5214994 (W.D. Ky. December 22, 2009). Accordingly, upon remand, Sun Life has based its denial decision on an independent medical examination and file review.

### D. Sun Life's Claim Denial

Originally, Sun Life said that it denied Costello's claim because her medical records did not support a finding that she was unable to work since, among other things, there was no evidence of "joint swelling, joint deformities, joint space narrowing and joint erosions . . . and she has full range of motion of her joints." (AR 00463). Sun Life continues to deny Costello's claim, relying on Dr. Knapp's conclusion that "the claimant does appear to have fibromyalgia [and] [h]er rheumatoid arthritis, such as it may be, appears to be very well controlled and not active." (AR 1505). In Dr. Knapp's opinion, "[t]he majority of her complaints are attributed to her ongoing fatigue and fibromyalgia, which in my opinion, do not support restrictions or limitations[.]" (AR 1508). Dr. Schwartz agreed with Dr. Knapp, concluding that Costello's "complaints are out of proportion to the evidence in the medical record. On none of Dr. Sims' or other observer's notes has she been described as having impaired ambulation, impaired ability to sit or [impaired ability] handle objects. The video of the examination is not that of someone who cannot do routine household chores." (AR 1685).

Costello argues that Sun Life's denial was arbitrary and capricious because it was not based on substantial evidence in the record, specifically failing to account for Costello's pain level.  As a basis for her argument, Costello points to the video of Dr. Knapp's examination and Costello clearly grimacing in pain, as well as her treating physician, Dr. Sims' documentation of her flare ups, joint pain, and muscle pain.  (Pl's Brief, 5 [DN 27].)  Contrary to Costello's argument, Dr. Knapp addressed her pain in his physical examination, finding numerous myofascial tender points and tenderness over the lower back, shoulders, hips and wrists, as seen in the video of his exam, but finding "no evidence of active synovitis or joint inflammation, deformity, or significant limitation of motion."  (AR 1504).  In his medical analysis, Dr. Schwartz stated that Costello's "major problem appears to be chronic pain and chronic fatigue compatible with fibromyalgia." (AR 1683).  After watching the video of Dr. Knapp's exam, Dr. Schwartz observed that "[a]t no time did she appear to be squirming in her seat, needing to lie down and rest, or grimacing with pain."  (AR 1684).  Both Dr. Knapp and Dr. Schwartz conclude that her rheumatoid arthritis is under control and the appropriate treatment for fibromyalgia is to remain active.  (AR 1506, 1684.)

Sun Life's reliance on the opinions of its reviewing consultants and physicians rather than Dr. Sims' medical opinion does not render its decision arbitrary and capricious. "Nothing in [ERISA] ... suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831(2003); Calvert, 409 F.3d at 293. "As long as a plan administrator offers a reasonable explanation based upon the evidence for its decision, it may choose to rely

upon the medical opinion of one doctor over that of another doctor." <u>Roumeliote v. Long Term</u> <u>Disability Plan for Employees of Worthington Industries</u>, 475 F.Supp.2d 742, 746 (S.D.Ohio 2007), aff'd, 292 Fed. App'x 472 (6th Cir.2008); <u>McDonald</u>, 347 F.3d at 169. Accordingly, Sun Life has provided a "reasonable explanation" based upon the medical evidence for its decision to credit the opinions of the independent medical examiners and file reviewers over that of Dr. Sims and the SSA's medical examiners.

## IV. CONCLUSION

For the foregoing reasons, the Court will enter Judgment consistent with this Opinion.

cc. Counsel of Record